FRANK JAGLENASKI *vs.* ANDERSEN COAL MINING COMPANY.

Suffolk.    March 13, 1913. — May 23, 1913.

Present: RUGG, C. J., HAMMOND, LORING, SHELDON, & DE COURCY, JJ.

*Practice, Civil,* Conduct of trial: judge's charge, Exceptions.  *Evidence,* Relevancy.

At the trial of an action for personal injuries, by a man of foreign birth employed upon a wharf, against his employer, it appeared that the plaintiff when injured was assisting in the repair of a hopper eleven feet high, and the sole issue raised by the evidence was, whether he was injured by falling from the hopper or by the falling upon him of a defective fence seventy-five feet distant from the hopper, the plaintiff's evidence tending to show that the defective fence caused the injury and the defendant's evidence tending to show that the plaintiff in statements in the English language had said that he "had fallen from the hopper." There was conflicting evidence as to the plaintiff's ability to express himself in English. The judge in his charge, in commenting on the defendant's evidence, stated in substance that the evidence as to the statements of the plaintiff was that he had said that the "accident occurred while

he was working on the hopper," and he raised the question whether, if the plaintiff had so stated, he meant any more than that he was helping a man who was hammering boards on the hopper, or whether he meant that he actually was on the hopper at work when injured. At the close of the charge the defendant's counsel called the judge's attention to the fact that he had misquoted the defendant's evidence and that his comment was inappropriate and harmful to the defendant, but, beyond stating to the jury that they were to act upon their understanding of the testimony and not upon his, the judge declined to change his charge in this respect; and the defendant excepted. *Held*, that the exception should be sustained, as the charge was misleading and prejudicial to the defendant.

At the trial of an action where there is conflicting evidence as to the ability of the plaintiff to make himself understood in English, and a material question is, whether a stenographer rightly took down a statement made by the plaintiff, evidence as to what pay the stenographer received is immaterial, it having no tendency to show whether or not he could or did understand the plaintiff rightly.

Where, at the trial of an action for personal injuries, the plaintiff testifies as to the cause of his injuries and is corroborated by a witness, and the defendant's evidence consists wholly of testimony of various persons as to statements made by the plaintiff at various times to the effect that his injuries were received in a way other than that testified to by him, which would not render the defendant liable, it is proper for the judge to rule that, if the jury believe that the plaintiff made the statements attributed to him by the defendant's witnesses, they would be warranted in believing that such statements were true notwithstanding the plaintiff's testimony to the contrary at the trial.

TORT for personal injuries, alleged to have been received by the plaintiff while in the defendant's employ on a wharf and to have been caused by the falling upon him of a fence which was a part of the wharf. Writ dated June 11, 1910.

In the Superior Court the case was tried before *Dubuque*, J. The material facts are stated in the opinion. At the close of the evidence, the defendant asked for the following rulings, which were refused:

"1. Upon all the evidence and pleadings in this case, the plaintiff is not entitled to recover."

"4. If the jury believe that the plaintiff made the statements attributed to him to the effect that he did fall off the hopper, and thereby received his injuries, the jury would be warranted in believing that such statement was true, notwithstanding the plaintiff's testimony to the contrary during the trial."

The jury found for the plaintiff in the sum of $4,500; and the defendant alleged exceptions.

The case was submitted on briefs.

*M. O. Garner*, for the defendant.

*W. W. Clarke & C. J. Muldoon, Jr.*, for the plaintiff.

HAMMOND, J.   The plaintiff was injured while at work for the defendant upon its wharf.   Upon the evidence, the questions whether he was in the exercise of due care, whether the fence was in a dangerous condition and if so for how long a time the danger had existed, whether the defendant knew or ought to have known of the danger, and whether the accident was attributable to the negligence of the defendant, were all questions for the jury.   The first request was therefore rightly refused.

There is however another exception taken by the defendant which requires consideration in some detail.   It appeared that the plaintiff was at work with one Brown in the repair of a hopper. He testified that boards were needed for the repairs; that Brown was repairing the hopper and the plaintiff was bringing boards from a place close to the fence to the hopper, a distance of about seventy-five feet; that the boards were "right side of the fence;" that while he "was pulling up . . . [the board] . . . the fence fell" upon him and he was hurt.   He further testified that the fence was nine or ten feet high, and that "the top of the hopper was about as high as a tall person could reach with a cane." There was other evidence that the height of the hopper was eleven or more feet.

One of the grounds of the defense was that the plaintiff's story of the way he was hurt was not true; that the plaintiff was not injured by the fall of the fence upon him, but by his fall from a ladder leaning against the hopper.   This ground of defense is stated at the beginning of the charge to the jury in the following language: "The plaintiff claims that while so employed he was injured by the falling of a fence upon him. . . . The defendant denies that he was injured in that way and claims that he was injured by falling off the ladder resting on the hopper, [while he was] engaged in the repair of the hopper so-called."   And the jury were told in substance that the burden was upon the plaintiff to show that his injuries were caused by the fall of the fence upon him; that unless they believed the story of the plaintiff in this respect the defendant was entitled to a verdict.   Here then was a sharply defined issue, reaching to the vitals of the case.   If the jury took the defendant's view, or were in doubt as to which way

the evidence preponderated on the plaintiff's view, then the verdict was to be for the defendant.

The only person on the wharf at the time of the accident beside the plaintiff was one Brown. Called by the plaintiff he testified that he and the plaintiff were repairing the hopper; that the "plaintiff went to get some pieces of board for that purpose, but did not bring the board;" that the witness was working inside the hopper and heard a scream, and went out and saw the plaintiff under the fence; that after considerable difficulty he released him, and that the plaintiff appeared badly hurt.

The defendant having no actual witness to the accident was compelled on this part of its defense to rely almost entirely upon alleged admissions of the plaintiff as to the manner of the accident, and, so far as affected the credibility of Brown, upon alleged statements made by him inconsistent with his testimony. To prove these admissions of the plaintiff and the inconsistent statements of Brown, the defendant called, first, one Charest, who testified that shortly after the accident he, while in the employ of counsel for the defense, went with Miss Hogan, a stenographer, and saw her "take a stenographic statement from the plaintiff;" "that in his statement the plaintiff said he had received his injury by falling from a hopper which he was repairing; that he was endeavoring to pull some nails out of boards in the hopper, and his hammer slipped, and he fell to the wharf, sustaining the injuries complained of;" second, Miss Hogan, who testified that while in the employment of counsel for the defendant she went as stenographer with Charest to take the statement of the plaintiff; that in that statement the plaintiff said he was injured "by falling from the hopper," and that "he made no mention of an injury caused by a fence falling on him;" both of these witnesses said that they had no difficulty in understanding the English spoken by the plaintiff, and the latter that she had no difficulty in taking his statement; third, one Farnham, who testified that in a conversation held by him with the plaintiff and Brown on the wharf a few minutes after the accident, both told him that the "plaintiff had fallen from the hopper and injured himself." One Tighe (the person who acting for the defendant hired the plaintiff) testified for the defendant that the plaintiff told him that he "had fallen from the hopper." Each of these two wit-

nesses said that he was well acquainted with the plaintiff and that he and the plaintiff could understand each other. The plaintiff was a Pole, and had lived in Chelsea in this Commonwealth for fifteen years. The evidence as to his ability to understand or to speak our language was somewhat conflicting, and the jury might have found that he understood and spoke it in only an imperfect way.

In this state of the evidence the judge as to this part of the case charged the jury as follows: "The plaintiff says . . . that he . . . was requested by the superintendent of the defendant company, Mr. Tighe,. to go and get some boards and to repair the hopper, and that at the time he was looking for a board and that while so doing, was pulling a board from a fence that was down, or something that was down, . . . that the fence fell on him. The defendant says that the accident did not occur in this way, that the plaintiff said that the accident occurred while he was working on the hopper; and right there you want to consider what was meant when he said that he was working on the hopper. Supposing a man is working in the erection of a building and he is either at the carpenter's bench or attending a carpenter who is working on the ground and they are preparing boards for that building. Is he working on the building? That is one way to test it. Is he working on that building? Although not actually upon the building or a ladder resting on the building, or inside of the building, if he is outside doing some work toward the erection or the repair of the building, do we in common language, talking about it, do we say that the man is working on the building?" And then after some general observations bearing upon the question of the degree of knowledge possessed by the plaintiff of our language and the chance of being misunderstood, he proceeds as follows: "Now when he was there in the hospital did the parties who came there come there with an idea that the accident had already happened . . . by his falling off the hopper? Did they come there with the preconceived idea or did they come there simply not knowing anything about it and trying to ascertain from him? If they came there with a preconceived idea, information received from either Farnham or from Tighe that the accident had happened in a certain way, did they put their questions to him in such a form as to elicit the fact that he was at the time

engaged in working on the hopper; and when he said, if he did say, that he was working on the hopper did it mean any more than that he was helping the man who was hammering the boards in place of the old boards to put on the hopper, or did it mean that he was actually on the hopper himself and on the ladder?"

It will be noted that no one of the witnesses called to testify as to the admissions of the plaintiff said that he used the words "while he was working on the hopper." On the contrary every one of them testified that he said he fell "from the hopper," and one of them also describes the precise cause of the fall, namely, the slipping of his hammer as he was attempting to pull out a nail. It is to be presumed that the judge supposed he was rightly quoting the testimony, but it is clear that he was not, that he entirely failed to quote it properly, and that the charge based upon a misapplication of it was not only uninstructive but entirely misleading, and was highly prejudicial to the defendant. And we do not think the statement to the jury, in another part of the charge, that the jury are to act upon their understanding of the testimony and not upon that of the judge cures in this case the difficulty.

It may be that if the defendant had failed to call the attention of the judge to this inaccuracy in stating the testimony and the consequent prejudice to the defendant in his treatment of it, the defendant would have been deprived of the right to raise the question here. But at the close of the charge, and before the jury had finally retired to consider the case, a colloquy not in the hearing of the jury, took place between the judge and the counsel for the defendant; and the latter called the attention of the judge to this radical misstatement of the evidence and specifically stated the difference between the language of the witnesses and that of the judge; and he excepted to this part of the charge. After further talk upon other alleged grounds of complaint on the part of the counsel for the defendant, the jury were further instructed but nothing was said as to this matter. We are constrained to say that the defendant has reasonable ground of complaint as to the charge upon this part of the case, and that for this reason there should be a new trial.

As the case is to go back it may be well to say that the evidence

as to the compensation of Miss Hogan * was inadmissible. It had no tendency to show whether or not she could or did rightly understand the plaintiff.

And the fourth request could properly have been given. It is true it may be said that it called upon the judge to charge as to the effect of a particular fact or series of facts, a thing which many times should not be done. But the sole evidence (except possibly inferences which could be drawn from the nature of the injuries) in support of the theory of the defendant was that as to the admissions of the plaintiff. If these admissions were to be rejected by the jury there was but little, if any, evidence in support of the defendant's theory. If the admissions were accepted by the jury, then the plaintiff had no case. In a word, so far as respected this ground of defense, the verdict hinged on the view the jury might take of the admissions. It is also to be borne in mind that the request had another aspect. While any statement of the witness Brown inconsistent with his testimony could not be evidence of the truthfulness of the statement and its only bearing would be on the degree of credibility to be given to his testimony, and would not have been admissible at all if he had not been a witness, yet the statements of the plaintiff himself, being in the nature of admissions, may be taken as evidence of the truthfulness of the things stated; and that would have been so even if he had not been a witness. The fourth request was true as a proposition of law; it had reference not to a part of the evidence presented by the defendant on this issue, but to substantially the whole of it. While the failure to give it may not strictly have been legal error, yet its manifest effect would have been to call sharply the attention of the jury to the body of the evidence upon this issue, its probative effect, and thus to simplify the case so far as dependent upon the issue.

*Exceptions sustained.*

---

* The question was, "What pay do you get?" and, subject to an exception by the defendant, the witness was permitted to answer, "Seventy-five dollars a month."